**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Cesar M.H.,

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Civil File No. 26-03336 (MJD/DJF)

---

Daniel P. Suitor, Daniel P. Suitor LLP, Counsel for Petitioner.

Worthington Phillips, David W. Fuller, Assistant United States Attorneys, Counsel for Respondents.

---

This matter is before the Court on Petitioner Cesar M.H.'s Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner claims he is being detained in violation of the Fourth Amendment and the Due Process Clause of the Fifth Amendment. Respondents counter that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) pending removal proceedings.

## I. FACTS[1]

Petitioner is a citizen of Mexico and resides in Rochester, Minnesota. (Doc. 1 ¶ 7.) Petitioner has lived in the United States intermittently since 2010, when he was 13 years old. (Id. ¶ 15.) Petitioner was first detained by ICE in 2012, when he was 15 years old, and granted voluntary departure on February 4, 2013. (Id.)

It does not appear that Petitioner left the country after being granted his voluntary departure. (Doc. 7-3 at 3; Doc. 7-8 at 2.) In September 2015, Petitioner was stopped by the Uvalde County Sheriff Department for a traffic violation, where he was then transferred to the Uvalde Border Patrol and subsequently deported. (Doc. 7-3; Doc. 6 at 2.) Petitioner returned to the United States in February 2016, where he was apprehended by Border Patrol in Eagle Pass, Texas, placed in expedited removal proceedings, and removed in May 2016. (Doc. 7-8 at 3.)

Petitioner returned to the United States at some point following his removal in May 2016. (Id.) He was arrested by the Rochester Police Department in October 2025 for criminal vehicular operation, where his case remains pending. (Id.)

---

[1] Facts not disputed are deemed admitted. See Paula G. v. Bondi, No. 26-CV-410 (JMB/DLM), 2026 WL 146003, at *1 n.2 (D. Minn. Jan. 20, 2026).

Petitioner lives with his three young children, who are all citizens of the United States, and he is a committed member of his community. (Id. ¶ 25.) Petitioner attends Catholic services at the Sisters of Saint Francis in Rochester and volunteers with the Salvation Army. (Id.)

On June 23, 2026, Petitioner was arrested by local authorities and taken to Olmsted County Jail. (Id. ¶ 16.) Petitioner was arrested and charged with misdemeanor domestic assault against his partner, Manuela Heriba. (Id.) Petitioner's partner was also charged with domestic assault based on the incident. (Id.) Petitioner maintains he was the victim during the incident. (Id.)

Also on June 23, 2026, Petitioner was released from Olmsted County Jail around 5:00 p.m. (Id. ¶ 17.) Petitioner was instructed to exit through the back of the building, where he was then immediately detained by ICE. (Id.) Petitioner maintains that he was taken to the Freeborn County Jail first, and that he was not transported to the Whipple Building until the following day. (Id. ¶¶ 20–21.) Petitioner currently remains in Respondents' custody at the Freeborn County Jail in Albert Lea, Minnesota. (Id. ¶ 26.)

Petitioner contends that he was not served a warrant at the time of his arrest. (Id. ¶ 18.) He states that ICE officers briefly showed Petitioner something

on the officer's phone – that he claimed was a warrant – but that Petitioner was not permitted to examine it. (Id.) Instead, Petitioner asserts that the was not served a Form I-200, Warrant for Arrest of Alien, until June 24, 2026 at the Whipple Building. (Id. ¶ 21.)

Respondents challenge Petitioner's position on the issuance and service of the alleged I-200. (Doc. 6 at 3.) Respondents assert that ICE issued a warrant for Petitioner's arrest and served it on Petitioner prior to taking Petitioner into custody after his release from the Olmsted County Jail. (Id.)

Petitioner filed the instant Petition for Writ of Habeas Corpus on July 17, 2026. (Doc. 1.) That day, the Court issued an Order to Show Cause. (Doc. 4.) On July 23, Respondents submitted a response. (Doc. 6.) In addition to their response, Respondents filed a declaration from Ivan Sabin, an ICE Deportation Officer, a 2011 Notice to Appear, a 2013 Immigration Judge Order, a 2016 Record of Deportable/Inadmissible Alien (Form I-831), a 2016 Notice to Alien (Form I-296), an Immigration Detainer (Form I-247A), a Warrant for Arrest of Alien (Form I-200), a 2016 Notice to Reinstate Prior Order (Form I-871), a 2026 Record of Deportable/Inadmissible Alien (Form I-831), a 2026 Notice to Appear, a 2026 Additional Charges of Admissibility/Deportability (Form I-261), and an ICE

memorandum. (Docs. 7, 7-1, 7-2, 7-3, 7-4, 7-5, 7-6, 7-7, 7-8, 7-9, 7-10, 7-11.) Petitioner submitted a reply on July 29, 2026. (Doc. 8.)

## II. DISCUSSION

Petitioner argues that his detention is unlawful on the following grounds: 1) as a violation of Petitioner's Fourth Amendment rights, 2) as a violation of Petitioner's Fifth Amendment Due Process Rights, and 3) as a violation of the Administrative Procedure Act ("APA"). (Doc. 1 ¶¶ 61–80.)

### A. Jurisdiction

A writ of habeas corpus may be granted to a petitioner who demonstrates he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). District courts have jurisdiction to hear habeas challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

Id. at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." Id. The petitioner bears the burden to prove illegal detention

by a preponderance of the evidence. See Belsai D.S. v. Bondi, 810 F. Supp. 3d 1016, 1020 (D. Minn. 2025) (citations omitted).

**A. Effect of Avila v. Bondi on Petitioner's Claims**

Respondents argue that Petitioner is subject to mandatory detention pursuant to § 1225(b)(2)(A), as confirmed by the Eighth Circuit in Avila v. Bondi 170 F.4th 1128 (8th Cir. 2026). (Doc. 6 at 5–6.) While the Eighth Circuit's decision in Avila would preclude a statutory claim premised on § 1225, Avila does not foreclose constitutional or statutory claims not raised in that case. The Court therefore turns to Petitioner's constitutional arguments.

**B. Fifth Amendment Due Process**

Petitioner applies the Mathews v. Eldridge balancing test to argue that his continued detention violates his constitutional due process rights guaranteed by the Fifth Amendment. (Doc. 1 ¶¶ 66–75 (citing Mathews, 424 U.S. 319 (1976).)

In response, Respondents contend that Petitioner is not challenging the adequacy of the procedures for determining whether he is an applicant for admission, but rather they argue that the determination that Petitioner is "not clearly and beyond a doubt entitled to be admitted" is a constitutionally insufficient basis upon which to justify the deprivation of his liberty, which is a substantive due process argument. (Doc. 6 at 7.) Respondents maintain that

Petitioner is actually requesting additional procedure in the form of the Mathews test, which is irrelevant because § 1225(b)(2)(A) requires mandatory detention. (Id. at 7, 12.)

Respondents also maintain that even if Petitioner's procedural due process argument is considered, "Petitioner still would not be entitled to additional process" under Mathews. (Id. at 10.)

**1. Petitioner's Fifth Amendment Protections**

Petitioner is entitled to due process of law under the Fifth Amendment. The Fifth Amendment provides, in pertinent part, that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The United States Supreme Court has made clear that the "Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas, 533 U.S. at 693.

**2. Procedural vs. Substantive Due Process**

Respondents argue that Petitioner's entire due process claim should be classified as substantive, rather than procedural. While Petitioner's procedural due process claim invokes § 1225(b)(2)'s provision requiring detention, Petitioner

argues that mandatory detention without an individualized particularized inquiry into the need for detention merely to continue Respondents' "en masse detentions of immigrants for the sake of detention" results in the considerable "risk of erroneous deprivation." (Doc. 1 ¶ 70.) The Court agrees that "[w]ithout an individual assessment, the risk of erroneous deprivation is high." Pedro A.D.L.O.O. v. Bondi, Civil No. 26-1959 (DWF/DJF), 2026 WL 948970, at *3 (D. Minn. Apr. 8, 2026). Thus, Petitioner's procedural due process challenge is properly raised.

### 3. The Mathews v. Eldridge Balancing Test

Turning to the merits of Petitioner's procedural due process claim[2], to determine whether a detainee's due process rights have been violated, courts apply a three-part balancing test that weighs the following:

> [1] the private interest that will be affected by the official action; [2] the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural

[2] Respondents cite the Eighth Circuit's decision in Banyee v. Garland, 115 F.4th 928 (8th Cir. 2024) but do not argue that it precludes Petitioner's procedural due process argument outright; instead, Respondents argue that because this is a substantive due process issue, there is no need to perform the Mathews balancing test. (Doc. 6 at 9.) To the extent the Court misconstrues Respondents' argument, the Court has already found the Eighth Circuit's broad due process pronouncements in Banyee are "cabined to the statutory and factual context in which they arose." See Orlando R.V.V. v. Blanche, Civ. No. 26-1903, slip op. (D. Minn. Apr. 28, 2026).

> safeguards; and [3] the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335.

### a. The First Mathews Factor

Respondents claim that the first factor, Petitioner's private interest, "though significant in the abstract, is limited by the detention posture Congress assigned to applicants for admission . . . Petitioner is not a lawfully admitted noncitizen challenging discretionary detention after lawful entry; he is detained under a statutory framework Congress made mandatory." (Doc. 6 at 10 (citing DHS v. Thuraissigiam, 591 U.S. 103 (2020)).) The Court disagrees that Thuraissigiam limits Petitioner's private interest. In Thuraissigiam, a noncitizen was detained for expedited removal pursuant to 8 U.S.C. § 1225 immediately after crossing the border. 591 U.S. at 114. The Court held that a noncitizen in his position is not entitled to a bond hearing because he "has only those rights regarding admission that Congress has provided by statute." Id. at 140.

Thuraissigiam is easily distinguishable on the facts because the petitioner "was apprehended 25 yards from the border and was thereafter continuously detained." Manuel G. v. Blanche, No. 26-cv-2385, 2026 WL 1256358, at *4 (D.

Minn. May 7, 2026) (emphasis added). Moreover, the factual predicate for Thuraissigiam "merely reinforces [the] longstanding understanding that noncitizens on the threshold of initial entry stand on a different footing than those who have passed through our gates." Lopez-Campos v. Raycraft,175 F.4th 713, 733 (6th Cir. 2026) (citation omitted) (cleaned up). Because Petitioner has been living in the country on and off for a period of over 15 years, and at least occasionally without detection, Thuraissigiam does not limit his private interest under the Mathews balancing test.

Likewise, Respondents' reliance on Landon v. Plasencia, 459 U.S. 21(1982) and Kaplan v. Tod, 267 U.S. 228 (1925) is also misplaced. Respondents cite the cases for the proposition that "lawful admission—not physical entry—is the touchstone for when aliens gain due process interests that could potentially require procedures beyond what Congress has provided (and thus all that the due process clause requires under the entry fiction doctrine)." (Doc. 6 at 13 (emphasis in original).) However, Landon and Kaplan predate Zadvydas by 19 and 76 years, respectively. Zadvydas is clear: "all 'persons' within the United States," including noncitizens whose "presence here is unlawful," are entitled to the due process protections of the Fifth Amendment. 533 U.S. at 693.

The Court finds that the first factor weighs heavily in Petitioner's favor. The interest in being free from physical detention is the "most elemental of liberty interests." Hamdi, 542 U.S. at 529; Zadvydas, 533 U.S. at 690. Moreover, Petitioner has established community and familial ties in the years he has spent living in the United States. Therefore, considering Petitioner demonstrates significant private interests affected by his ongoing detention, the first Mathews factor favors Petitioner.

**b. The Second Mathews Factor**

The second Mathews factor requires the Court to consider the risk of an erroneous deprivation of Petitioner's liberty as well as "the degree to which additional or substitute procedural safeguards could ameliorate the risks of erroneous deprivation." Selvin Adonay E.M. v. Noem, 817 F. Supp. 3d 720, 734 (D. Minn. 2025) (citing Mathews, 424 U.S. at 335).

The court in Jesus Alejandro G. A v. Blanche noted that detention during removal proceedings is "'constitutionally permissible'" but "the government's authority to detain noncitizens is not limitless" and "should advance two regulatory goals: (1) ensuring the appearance of noncitizens at their immigration proceedings; and (2) preventing danger to the community while those

proceedings are ongoing." No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138, at *11 (D. Minn. May 18, 2026) (citing Demore v. Kim, 538 U.S. 510, 513 (2003); Zadvydas, 533 U.S. at 690)). A bond hearing before an Immigration Judge where both parties have an opportunity to be heard will allow an Immigration Judge to determine whether Petitioner's detention is, in fact, necessary to ensure Petitioner will be present at his future immigration proceedings and that he does not pose a danger to his community.

Respondents argue that "the risk of erroneous deprivation is low because detention under § 1225 turns on objective statutory predicates—most importantly whether Petitioner is an applicant for admission and whether the applicable subsection of § 1225 governs his custody." (Doc. 6 at 10.) Respondents contend that "[a]dditional procedures aimed at discretionary factors would add little because Congress did not make them material to detention under § 1225." (Id. at 11.) Respondents do not address whether detention is necessary to ensure Petitioner's appearance at his immigration proceedings or to prevent danger to the community.

On the other hand, Petitioner asserts that he will continue to be deprived of his liberty interest if the current procedure –"entailing en masse detentions of

immigrants for the sake of detentions" without individual assessments – continues to be followed. (Doc. 1 ¶ 70 (citing Pedro A.D.L.O.O., 2026 WL 948970, at *3).)

The Court again disagrees with Respondents' myopic focus on § 1225(b)(2)(A) detention. Petitioner points out that he has a life and well-established connections in Minnesota. (Doc. 8 at 20.) Specifically, he has three young children, all of whom are citizens of the United States, he has lived in Minnesota periodically for many years, and he is involved in his local Catholic church as well as the Salvation Army. (Doc. 1 ¶ 25.) Despite his recent arrest, the state court released Petitioner pending resolution of his charges. (Doc. 1 ¶ 17.)

As such, continuous detention without an opportunity to be heard does not fulfill the promise of Zadvydas that every person in this country is entitled to due process of law. 533 U.S. at 690; see also Pedro A.D.L.O.O., 2026 WL 948970 at *3. The Court therefore finds that the second Mathews factor also weighs in favor of Petitioner. Without an individual hearing, the risk of erroneous deprivation of Petitioner's liberty interests from the practice of "en masse detentions" is too great.

### c. The Third Mathews Factor

The third Mathews factor requires the Court to consider the government's interest "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335. Respondents argue that the government's interest is strong because "Congress has a strong interest in the uniform administration of the immigration laws, in ensuring the availability of applicants for admission during removal proceedings, and in avoiding the administrative burdens of grafting onto § 1225 a Matthews analysis that Congress did not create." (Doc. 6 at 11.)

As discussed, no opportunity to be heard equals no due process. While the Court acknowledges that the government has a substantial interest in protecting the public, especially in a case such as this where a petitioner's criminal record and immigration history is not blemish-free, such "interest[] [is] not subverted by requiring the minimal procedural safeguard of a bond hearing." Manuel G., 2026 WL 1256358, at *5.

The Court agrees that granting Petitioner a bond hearing – which is hardly an "administrative burden"– will give both parties an opportunity to adequately

present arguments on the dangerousness and flight risks posed by Petitioner's specific circumstances. This due process safeguard will reduce the risk of erroneous deprivation of Petitioner's rights without imposing significant burdens on the Government.

**C. Remedy**

All the Mathews factors weigh in favor of Petitioner. Therefore, the Court concludes that mandatory detention pursuant to § 1225(b)(2) as applied to Petitioner violates his constitutional right to procedural due process. The appropriate remedy for this constitutional deprivation is to provide him with an opportunity to be heard. In this case, that means a bond hearing.

The Court acknowledges that the parties here spend considerable briefing on Petitioner's arrest, arguing about the sufficiency of the warrant as well as the Respondents' compliance with the INA's warrantless arrest statute and the Fourth Amendment. However, because the Court finds that Petitioner's current detention without a bond hearing violates his Fifth Amendment due process protections, the Court need not consider Petitioner's alternative arguments. See Faysal N. v. Noem, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at *3 n.3 (D. Minn. Jan. 6, 2026) (stating that when the court's decision on one of the

petitioner's asserted theories for relief meant that the petitioner's detention was unlawful, the court did not need to reach the petitioner's alternative arguments).

## III. ORDER

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Petitioner's Petition for Writ of Habeas Corpus **[Doc. 1]** is **GRANTED IN PART** as follows:

    a. Petitioner's detention under 1225(b)(2) violates his due process rights.

    b. Respondents are ordered to provide Petitioner with a bond hearing within one week after the issuance of this Order;

    c. Respondents are ordered to file notice of such bond hearing directly with the Court within two (2) hours of its scheduling[3];

    d. The Immigration Judge is prohibited from denying the opportunity for a bond hearing based on a purported lack of jurisdiction;

    e. If a bond hearing takes place that results in Petitioner's release, Respondents are ordered to:

---

[3] The purpose of this is to provide timely notice to Petitioner's counsel so that counsel can prepare for the bond hearing and/or find an immigration attorney to represent Petitioner at the hearing.

i. Release Petitioner into Minnesota;

ii. At a safe time and place communicated at least two (2) hours in advance to Petitioner's counsel; and

iii. With all of Petitioner's personal effects in Respondents' possession, such as Petitioner's driver's license, immigration papers, passport, cell phone, keys;

f. If a bond hearing does not take place within one week, Respondents are ordered to immediately release Petitioner from custody into Minnesota with the same conditions of release described in 1(e); and

2. Within 48 hours of the conclusion of the bond hearing or Respondents' decision to release Petitioner from custody, Respondents must file a status report with the Court detailing the results of the Bond Hearing or its actions related to release; and

3. Any motion for attorney fees and costs pursuant to the Equal Access to Justice Act must be filed within 21 days of entry of judgment in this matter, along with a well-reasoned memorandum of authorities explaining why an award of fees and costs is warranted.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 31, 2026

s/Michael J. Davis
Michael J. Davis
United States District Court